UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SOPHIA T. ELLIS**

      **Plaintiff,**              **CIVIL ACTION NO. 05-CV-72643-DT**

  **vs.**                           **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Sophia T. Ellis filed an application for Social Security Income (SSI) on March 15, 2002 alleging disability since February 1, 2000. (Tr. 57). Plaintiff's application for SSI was initially denied on July 15, 2002. (Tr. 40, 243). On October 30, 2002 Plaintiff then filed an application for Disability Insurance Benefits ("DIB") alleging disability since December 18, 2001. (Tr. 60, 247). Plaintiff's application for DIB was denied on February 26, 2004. (Tr. 45). Plaintiff sought review by an ALJ and was given an administrative hearing before ALJ Anthony Roshak on August 17, 2004. (Tr. 31-34). The ALJ denied Plaintiff's claims in a written opinion issued March 16, 2005.

(Tr. 21-29). The Appeals Council denied Plaintiff's request for review on June 13, 2005. (Tr. 5-7). The ALJ's written opinion is now the final opinion of the Commissioner. (Tr. 5). *See* 20 C.F.R. § 404.981. Plaintiff appealed the denial of her claims to this Court, and both parties have filed motions for Summary Judgment.

## **MEDICAL HISTORY**

Plaintiff was born on November 13, 1965. (Tr. 60). She has given birth to five children. (Tr. 258). During her last delivery in 2000, Plaintiff had an epidural and alleges low back pain since that time. (Tr. 210). Plaintiff has a recurring history of alcohol abuse, with binge drinking (12 beers) once a week. (Tr. 219).

On December 18, 2001 Dwight E. Smith, M.D., an internist, evaluated Plaintiff for the first time and stated that she would be unable to work due to a pulled right groin muscle injury and lumbar radiculopathy, but tentatively could return to work January 23, 2002. (Tr. 173). Dr. Smith then referred Plaintiff for an electromyography diagnostic assessment on January 14, 2002, which indicated that Plaintiff had borderline amplitudes and minimal peripheral neuropathy, with no lumbar radiculopathy. (Tr. 165). On February 6, 2002, Dr. Smith again stated that Plaintiff would be unable to return to work due to a pulled right groin muscle injury and lumbar radiculopathy. (Tr. 163).

In March 2002 Plaintiff complained of low back pain with sciatica; her medication included Vicodin and Valium. (Tr. 162). In April 2002, Plaintiff complained of lower extremity pain and peripheral neuropathy and was prescribed Celebrex. (Tr. 159).

On June 14, 2002 Plaintiff completed a form indicating that she fixed some meals for herself and two little children (although standing was difficult), that she occasionally went shopping

(although she often sent a friend), that she read magazines, visited with friends, and watched television. (Tr. 87-90).

On June 15, 2002 an MRI examination of Plaintiff's lumbar spine showed mild diffuse facet hypertrophic arthropathy, mild stenosis of L5-S1 neural foramina, and effacement of a nerve root. (Tr. 209).

Christopher Chang, M.D. performed a consultative examination of Plaintiff on June 22, 2002. (Tr. 175-178). At that time, Plaintiff complained of back pain and Dr. Chang noted some reduced low back range of motion. (Tr. 175, 177). Dr. Chang indicated that all of Plaintiff's transfer activities (from chair to standing, from standing to lying down) were smooth and well coordinated; that her gait, stance, muscle strength, and grip strength were all normal. (Tr. 176-177). Dr. Chang concluded that Plaintiff had back strain related to a spinal block during the delivery of her child, but that she could nonetheless perform all activities without limitation or pain. (Tr. 177).

In July 2002, a state agency medical consultant reviewed the evidence of record and concluded that Plaintiff could perform light work. (Tr. 137-144).

On October 9, 2002, Dr. Smith completed a form indicating that Plaintiff was unable to do any work for an indefinite period of time. (Tr. 203). On October 11, 2002 Plaintiff complained of wrist, leg, and back pain; Plaintiff had an anxiety attack and Celebrex was prescribed. (Tr. 207). In a consultation note on October 30, 2002, Dr. Smith diagnosed Plaintiff with lumbar disc disease and anxiety and noted that drinking was a modifying factor in Plaintiff's falling off a car due to "domestic problems" with her sister. (Tr. 201).

On November 13, 2002 Plaintiff complained of dizziness, irregular vaginal bleeding and fatigue. (Tr. 233).

On December 5, 2002 Plaintiff completed a work history report for the Social Security Administration indicating that she did not need any special help to take care of her personal needs and grooming; that she usually prepared her own meals, washed dishes and laundry, and read the Bible and newspapers. (Tr. 116-118). At the same time, a close friend completed a form confirming Plaintiff's representations, and indicating that Plaintiff also watched her children, fixed things and performed personal grooming. (Tr. 122-123).

Internist P. Patel, M.D. performed a consultative examination of Plaintiff at the request of the Disability Determination Service on December 27, 2002. (Tr. 210). Dr. Patel reported that Plaintiff had limited low-back range of motion, positive straight leg raising, and altered sensation in both legs, but had a normal gait and normal strength. (Tr. 211). Dr. Patel also noted that Plaintiff had anxiety and panic attacks and, although she was on medication, she was tearful during the examination. (Tr. 211).

Fook Ning Leung, M.D., a psychologist, performed a consultative examination of Plaintiff on February 3, 2003. (Tr. 214-216). Dr. Leung diagnosed dysthymic disorder and pain disorder associated with post-Cesarean section, and rated Plaintiff's Global Assessment of Functioning (GAF) at 55 (moderate symptoms). (Tr. 216). Dr. Leung also stated that Plaintiff's prognosis was fair. (Tr. 216).

On February 18 2003, a second state agency medical consultant reviewed the evidence of record and found that Plaintiff could perform light work, concluding that the medical evidence did not support the severity of Plaintiff's allegations. (Tr. 179-186).

On February 24, 2003 a state agency psychiatric consultant reviewed the evidence of record and found that Plaintiff's mental impairment was not severe. (Tr. 187-201).

On April 29, 2003 Plaintiff complained of generalized body aches and pains, fatigue, and major depression while using Zoloft. (Tr. 232).

In May 2003 Plaintiff was seen by Sara Zacher, MSW, a therapist, and Dr. Killian, M.D., a psychiatrist, at Developmental Centers, Inc. on referral from her internist. (Tr. 218-227). The psychiatrist diagnosed Plaintiff with major depressive disorder and alcohol abuse, and rated her GAF at 50 (serious, but almost moderate symptoms). (Tr. 220).

On June 19, 2003 Plaintiff complained of low back pain, frequent crying spells and depression. (Tr. 231). Her medication at that time included Zoloft, Vicodin and Prozac. (Tr. 231). By July 31, 2003 Plaintiff's medication had changed to Zoloft, Vicodin and Amoxicillin. (Tr. 230).

On August 5, 2003 Dr. Smith opined that Plaintiff was disabled and unable to perform her usual occupation and unable to perform any job. (Tr. 236).

On November 13, 2003 Plaintiff complained of anxiety and difficulty sleeping; Xanax was prescribed. (Tr. 229).

On May 24, 2004 Plaintiff complained of lower back pain; Tylenol #3 was prescribed. (Tr. 228).

## HEARING TESTIMONY

At the administrative hearing, Plaintiff testified that she was disabled due to back pain, depression, anxiety attacks, panic attacks and daily crying spells. (Tr. 265, 269). Plaintiff denied all activities except watching television, visiting with friends and relatives, and grocery shopping with someone. (Tr. 259-260). Plaintiff alleged difficulty sitting or standing for long

periods and estimated that she could stand for 5-10 minutes, sit for 10 minutes, walk half a block, and lift four pounds. (Tr. 261-262). Plaintiff also complained of difficulty with concentration and attention. (Tr. 262-263). Plaintiff testified that her medication had no effect on her pain and that her psychiatric medication had no effect on her depression. (Tr. 268-269).

      Pauline Pegram, a vocational expert, also testified at the hearing. (Tr. 270-276). The ALJ first asked the vocational expert hypothetical questions regarding a person of Plaintiff's age, education, and exertion limitations described in her hearing testimony, such as her limited ability to sit, stand, walk, lift, carry, push, or pull. (Tr. 273-274). When asked whether this hypothetical person would be able to go back and perform any of her past work, the vocational expert said no. (Tr. 274). When asked whether this hypothetical person with these same exertional limitations could do any other work, the vocational expert said yes, with the caveat Plaintiff had indicated severe limitations in lifting, sitting, standing, and walking. *Id.* The vocational expert stated that these restrictions would mean that Plaintiff must have a job with a sit/stand option and it would have to be a sedentary occupation lifting no more than five pounds. *Id.* The vocational expert testified that there are approximately 4,000 service occupations that require very little lifting and have a sit/stand option, including lobby attendants, information clerks, badge checkers, and gate checkers, in the state and one half in southeast Michigan. *Id.* The vocational expert further testified that there are approximately 6,000 jobs in the region in positions such as assembly inspection, sorting, and packaging performed at a bench or table top with a sit/stand option. *Id.* When asked whether there was any work Plaintiff could do assuming her non exertional limitations, such as physical, mental, postural, manipulative, visual, environmental, and functional, the vocational expert said no. (Tr. 274-275). The vocational

expert testified that Plaintiff's testimony regarding pain, anxiety, depression, panic attacks, crying spells, and lying down throughout the day, would interfere with her ability to maintain production standards on a consistent basis. (Tr. 275).

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

>   (1) she was not presently engaged in substantial gainful employment; and
>
>   (2) she suffered from a severe impairment; and
>
>   (3) the impairment met or was medically equal to a "listed impairment;" or
>
>   (4) she did not have the residual functional capacity (RFC) to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner would, at step five, consider her RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

In this case, the ALJ concluded that Plaintiff retained the functional capacity to perform work-related functions except for work involving prolonged standing/walking, lifting/carrying more than 5 pounds, or more than unskilled tasks, and she requires a sit/stand option for the sake of comfort. The ALJ concluded at step five that Plaintiff was not disabled because she retains the functional capacity to perform some work in the regional economy.

Plaintiff argues that the ALJ's functional capacity finding did not give proper deference to the opinions and assessments by Plaintiff's treating physicians that her complaints of pain and

limitations prevented the performance of work in a competitive work setting. The "treating physician rule" requires that an ALJ give complete deference to the well supported statements of treating physicians that are consistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). However, an ALJ may reasonably discount the opinions or statements of a treating physician when those statements are unsupported by objective evidence or conflict with other objective evidence on the record. *McCoy o/b/o/ McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). The ALJ properly assessed the treating physicians' opinions and provided adequate reasons to reject it. Concerning Plaintiff's back condition, the ALJ reasonably relied on the relatively normal electrodiagnostic assessment, Plaintiff's normal gait, and her normal muscle strength to find that her condition was not disabling. In addition, Dr. Chang indicated that Plaintiff's transfer activities (from chair to standing, from standing to lying down) were smooth and well coordinated, and that Plaintiff could do all activities without limitation or pain. The ALJ also relied on Plaintiff's daily activities, which at the hearing in 2004 Plaintiff testified were quite limited, but had previously been reported as much more extensive. Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that her subjective complaints were not credible in light of her ability to perform other tasks."). Finally, the ALJ placed some reliance on the assessments of the state agency medical consultants. Most significantly, the ALJ adopted a functional capacity finding that mirrored the physical limitations Plaintiff testified to at the hearing. The ALJ reasonably found that Dr. Smith's opinion that Plaintiff was unable to work at any job was overstated. The ALJ recognized that the opinion was not medically well supported and was also inconsistent with the other significant evidence of record and thus could not be given controlling or significant weight. Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has

consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

Concerning Plaintiff's mental condition, the ALJ recognized that Plaintiff was diagnosed with major depressive disorder, generalized anxiety disorder, and panic attacks, and noted that the medical evidence reflected the existence of moderate symptoms. This was fully consistent with Dr. Leung's GAF rating of 55, and with the rating of 50 by the psychiatrist from Developmental Centers, Inc. The ALJ, however, reasonably found that these symptoms would be accommodated by limiting Plaintiff to unskilled work. See 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simply duties that can be learned on the job in a short period of time."); Allison v. Commissioner of Social Security, No. 90-4090, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000) ("We believe that the ALJ's qualification that Allison was limited to simply, repetitive, and routine tasks, within this category of light work, simply means that Allison is limited to unskilled light work.") (citing 20 C.F.R. § 404.1568(a)). The ALJ did limit Plaintiff due to her mental conditions by restricting her to unskilled work, and that limitation was supported by the medical evidence of record.

Plaintiff also contends that the ALJ should not have considered her demeanor at the hearing in assessing her credibility and functional capacity. This, however, was proper, especially when the ALJ also considered the other pertinent evidence of record, as was the case here. Social Security Ruling (SSR) 96-7p ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's

statements."); Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) ("The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints.").

Plaintiff argues that the ALJ's finding that Plaintiff had the capacity to perform work was flawed because it was based on an incomplete hypothetical question to the vocational expert that included only Plaintiff's exertional limitations. Plaintiff notes that the vocational expert precluded all work when asked a hypothetical question including all Plaintiff's alleged nonexertional limitations. As discussed above, the ALJ reasonably found that Plaintiff's allegations of debility were not fully credible, and that she could do a range of unskilled sedentary work. Nonetheless, the ALJ's functional capacity finding included nonexertional limitations, since unskilled work contemplates job limitations that do not involve sitting, standing, walking, lifting, carrying, pushing, or pulling. See 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). Unskilled work also generally does not involve a "high degree of interaction with others." Zalewski v. Heckler, 760 F.2d 160, 165 n.5 (7th Cir. 1985); see also 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.00(g) (recognizing that "the primary work functions in the bulk of unskilled work relate to working with things (rather than with date or people)"). Accordingly, the ALJ's hypothetical questions (which mirrored the ALJ's functional capacity finding) was complete and could be relied upon to determine whether Plaintiff could perform a significant number of jobs. Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

The ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence on the record.

### **RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be **DENIED**, and Defendant's Motion for Summary Judgment should be **GRANTED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 28, 2006                     s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE

## Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 28, 2006                     s/ Lisa C. Bartlett
                                         Courtroom Deputy